**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| KRANTHI SAGAR PACHIKORU, | |
| Plaintiff, | |
| v. | Civil Action No.  4:25-CV-40184-MRG |
| VERTEX PHARMACEUTICALS INC., | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S**
**MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Vertex Pharmaceuticals Incorporated ("Vertex" or "Defendant") submits this Memorandum of Law in Support of Its Motion to Dismiss Plaintiff Kranthi Sagar Pachikoru's ("Plaintiff") Complaint, with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6).

**INTRODUCTION**

Vertex is a global biotechnology company that invests in scientific innovation to create transformative medicines for people with serious diseases. In March 2023, Vertex hired Plaintiff to work as a GMP Operational Quality Manager overseeing parts of the drug manufacturing process. Vertex committed to supporting Plaintiff's immigration status, and after he accepted Vertex's employment offer, Vertex engaged and paid outside counsel to submit the necessary paperwork to sponsor his immigration status. Vertex's immigration support, however, was contingent on Plaintiff meeting certain performance expectations. By Plaintiff's own admission, Vertex made Plaintiff aware of its concerns regarding Plaintiff's performance issues throughout his employment. As a result of these concerns, on March 7, 2025, Plaintiff's manager placed him on a 60-day performance improvement plan ("PIP") to provide Plaintiff an opportunity to improve his performance. Vertex did not terminate Plaintiff's employment, and in fact, Plaintiff expressly

pleads that Vertex sought to work with him long-term. However, in response to the PIP, Plaintiff voluntarily resigned from his employment on March 20, 2025.

Plaintiff now asserts eight Counts, all of which this Court should dismiss for the reasons set forth below:

- Counts I and VI – wrongful termination in violation of public policy ("WTPP"): Plaintiff does not, and cannot, identify a public policy to support a WTPP claim under Count I, and Plaintiff admits he did not file a written rebuttal, as statutorily required, for Count II. Counts I and VI also fail from the outset because Vertex did not terminate Plaintiff's employment, constructively or otherwise.

- Counts II and III – Fraudulent Inducement and Fraudulent Misrepresentation: Plaintiff does not plausibly allege Vertex lacked the present intent to sponsor his green card nor does he plausibly allege reliance on Vertex's alleged misrepresentations to the U.S. Department of Labor ("U.S. DOL") and U.S. Citizenship and Immigration Services ("USCIS") as true. Furthermore, Plaintiff failed to meet the heightened pleading standard with respect to Count II.

- Count IV – 42 U.S.C. § 1981: Plaintiff pleads no facts showing Vertex made decisions because of his race, or that he was subject to harassment. Likewise, Plaintiff alleges no protected activity under Section 1981 and no adverse action causally tied to such activity.

- Count V – Trafficking Victims Protection Reauthorization Act ("TVPRA"): Plaintiff's factual allegations do not even begin to suggest that Plaintiff – a highly sophisticated professional – was subject to forced labor.

- Count VII – promissory estoppel claim: Plaintiff fails to adequately allege that Vertex promised to unconditionally sponsor his immigration status or show reasonable reliance on Vertex's commitment to his detriment because Plaintiff's green card sponsorship process ended due to his failure to fulfill the requirements of Vertex's U.S. Immigration Policy, and Vertex did in fact sponsor his green card.

- Count VIII – intentional infliction of emotional distress: This claim, among other defects, is barred by the Massachusetts Workers' Compensation Act.

For all these reasons, and as discussed further below, Vertex respectfully requests that the Court enter an Order dismissing the Complaint in its entirety, with prejudice.

## PLAINTIFF'S ALLEGATIONS[1] AND PROCEDURAL BACKGROUND

### I.    PLAINTIFF IS HIRED AS GMP OPERATIONAL QUALITY MANAGER

In March 2023, Vertex hired Plaintiff for a GMP Operational Quality Manager role. ECF No. 1, Complaint ("Compl.") ¶¶ 8, 10. During the hiring process, Quality Assurance Operations ("QA") Associate Director[2] Claudia Lee ("Ms. Lee") and QA Senior Director Sue Miles ("Ms. Miles") informed Plaintiff that Vertex would sponsor his green card application as part of his Vertex employment. *Id.* ¶ 9. According to Vertex's U.S. Immigration Policy, Plaintiff was required to meet certain performance expectations as a condition of employment and green card sponsorship. *Id.* ¶ 31. Specifically, Plaintiff was expected to achieve a "leading" rating for at least one year, or alternatively, a "strong" rating for two years from his first day of employment with Vertex. *Id.*

After Plaintiff accepted Vertex's employment offer, Vertex filed a Labor Condition Application ("LCA") for Plaintiff with the U.S. DOL, which listed a Standard Occupational Classification ("SOC") code reflecting that Plaintiff would be working for Vertex as a Project Management Specialist. *Id.* ¶ 12. On May 4, 2023, USCIS issued a Request for Evidence ("RFE") inquiring as to whether Plaintiff's role at Vertex qualified as a specialty role for purposes of his immigration status. *Id.* ¶ 13.

Plaintiff alleges that on June 23, 2023, in response to USCIS's inquiry, Ms. Lee altered his job duties on the USCIS RFE worksheet to include additional duties and later submitted the form to USCIS without his consent. *Id.* ¶ 16. Plaintiff further alleges that on July 21, 2023, Ms. Lee changed his job description according to the alterations she made on the RFE worksheet and removed his people management responsibilities. *Id.* ¶ 18. Plaintiff, nonetheless, signed off on his

---

[1] Insofar as Vertex refers to factual allegations contained in the Complaint, those allegations are assumed to be true only for the purposes of this Motion. In doing so, Vertex does not agree that the allegations in the Complaint are true, and Vertex expressly reserves the right to further respond to these allegations.

[2] The Complaint incorrectly refers to Ms. Lee as a Senior Manager.

new job description and continued to work for Vertex for nearly two more years. *Id.* ¶¶ 18, 23, 125. During Plaintiff's employment, Vertex continued to work with him to help him secure a green card. *Id.* ¶ 43, 52, 54, 80.

## II.    PLAINTIFF'S POOR PERFORMANCE AND VOLUNTARY RESIGNATION

In his role with Vertex, Plaintiff was responsible for overseeing product quality and assurance related to the manufacturing process for one of Vertex's medicines. *Id.* ¶¶ 15-16, 18, 89. Plaintiff reported to Ms. Lee, who, in turn, reported to Ms. Miles, the same individuals who had hired him. *See id.* ¶¶ 9, 21, 90(b).

After his first year, Plaintiff began receiving performance feedback from his manager relating to his poor communication skills, leadership abilities, and failure to meet his manager's expectations, among other concerns. *Id.* ¶¶ 46, 68, 87, 93, 95-96, 98(b). As a result of his underperformance, in February 2025, Vertex reduced Plaintiff's responsibilities by reassigning him to a slower-moving project. *Id.* ¶ 90a. Plaintiff subsequently received a performance rating of "building" on his annual performance review, which he alleges was a reduction from his previous rating of "strong." *Id.* ¶ 92. His performance rating "disqualified him from Green Card sponsorship under Vertex's U.S. Immigration Policy and prevented his internal mobility." *Id.*

On March 7, 2025, Plaintiff was placed on a 60-day PIP. *Id.* ¶ 104. Later that same day, Plaintiff requested a meeting with Human Resources. *Id.* ¶ 109. On March 10, 2025, Plaintiff met with a Vertex Employee Relations representative and verbally alleged that his PIP had been fabricated by Ms. Lee and Ms. Miles in retaliation for alleged internal reports he made regarding non-compliance, product quality, and patient safety concerns. *Id.* ¶¶ 106-107. In response, Vertex initiated an investigation into Plaintiff's allegations. *Id.* ¶¶ 109-110.

On March 20, 2025, Plaintiff emailed his new manager to cancel a scheduled PIP meeting and instead submitted his resignation. *Id.* ¶¶ 114, 116. Plaintiff alleges that he "prepared to file an

4

internal legal complaint" regarding his PIP, but he never did so prior to his resignation. *Id.* ¶¶ 114, 174-175. Following Plaintiff's resignation, Vertex ceased its sponsorship of his green card application. *Id.* ¶ 119.

## ARGUMENT

### I.      RELEVANT LEGAL STANDARDS

To survive a Rule 12(b)(6) motion, a complaint must set forth sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Mere "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not enough. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible if, after accepting as true all non-conclusory factual allegations, the Court can reasonably infer that the defendant is liable for the misconduct alleged. *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011). "Dismissal for failure to state a claim is appropriate if the complaint fails to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (internal quotation marks and citations omitted). Furthermore, a party alleging fraud has a heightened burden to "state with particularity the circumstances constituting fraud[.]" Fed. R. Civ. P. 9(b).

### II.     PLAINTIFF FAILS TO STATE A CLAIM FOR WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY (COUNTS I & VI)

Wrongful termination in violation of public policy ("WTPP") is a narrowly construed common law claim that provides a remedy for an at-will employee who is "terminated contrary to a well-defined public policy." *Wright v. Shriners Hosp. for Crippled Child.*, 412 Mass. 469, 472 (1992). Courts (primarily the Massachusetts Supreme Judicial Court ("SJC")), not the legislature,

define what constitutes a public policy for purposes of WTPP claims. The SJC "consistently has interpreted the public policy exception narrowly, reasoning that to do otherwise would 'convert the general rule [that an employment at-will contract can be terminated at any time for any reason or for no reason at all] into a rule that requires just cause to terminate an at-will employee.'" *King v. Driscoll*, 418 Mass. 576, 582 (1994) (quoting *Smith-Pfeffer v. Superintendent of the Walter E. Fernald State Sch.*, 404 Mass. 145, 150 (1989)).

To state a WTPP claim, Plaintiff must show that he was engaged in conduct covered by a well-established public policy and that he was terminated "for a reason contrary to a well-established public policy." *Shea v. Emmanuel Coll.*, 425 Mass. 761, 764 (1997). Plaintiff fails to make this showing.

### A.      Plaintiff's WTPP Claim in Count I Fails Because Plaintiff Has Not Identified a Public Policy Sufficient to Ground that Claim.

Count I alleges that Vertex violated Massachusetts public policy by terminating Plaintiff's employment in retaliation for Plaintiff making complaints to senior management about alleged drug product quality and patient safety issues "that he reasonably believed violated U.S. Food and Drug (FDA) regulations under 21 C.F.R. and posed a risk to public health and safety." Compl. ¶¶ 127-131. Plaintiff, however, has not identified a clear public policy sufficient to ground his claim.

### 1.      Alleged Violations of Federal Regulations Cannot Ground a WTPP Claim.

Alleged violations of federal regulations alone cannot be the basis of a WTPP claim. *Murray v. Warren Pumps, LLC*, 821 F.3d 77, 91 (1st Cir. 2016) (rejecting plaintiff's WTPP claim that he was terminated for making workplace complaints because "no . . . Massachusetts courts have ever relied on federal authority as the sole source for the state common law wrongful discharge claim"). Rather, the SJC has held that "[r]edress is available for employees who are terminated for asserting a legally guaranteed right (e.g., filing workers' compensation claim), for

6

doing what the law requires (e.g., serving on a jury), or for refusing to do that which the law forbids (e.g., committing perjury)." *Smith-Pfeffer*, 404 Mass. at 149-50. Here, as in *Murray*, Plaintiff similarly relies on alleged violations of federal regulations as the basis for his WTPP claim. Compl. ¶¶ 127-131. But as the court held in *Murray*, raising concerns about alleged federal (in this case FDA) violations—particularly when identifying such concerns is part of the employee's job—while "generally socially desirable," is not enough to trigger a WTPP claim under Massachusetts law because such conduct is not a legally guaranteed right or required by the law, nor does Plaintiff allege that Vertex required him, and that he refused, to engage in unlawful conduct. *Murray*, 821 F.3d at 89-91.

Finally, disagreeing with an employer's decisions is also insufficient to support a wrongful termination claim. *Id.* at 91; *Smith-Pfeffer*, 404 Mass. at 151 ("An employee, even one in a socially important occupation, who simply disagrees with [his] employer's policy decisions, may not seek redress in the courts."). Plaintiff's allegations supporting his WTPP claim are just that—disagreements with management over internal decisions related to manufacturing process and product quality investigations. Compl. ¶¶ 128-130.

### 2. Expressing Concerns Regarding General Health and Safety Do Not Amount to a Public Policy for Purposes of a WTPP Claim.

Even if Plaintiff were to argue that generalized and unsupported concerns regarding public health and safety could ground a WTPP claim—which he does not—that claim would likewise fail because his allegations are "too remote or speculative" to state a WTPP claim. *Nelson v. Anika Therapeutics, Inc.*, No. 09–03231–A, 2011 WL 4056320, *6 (Mass. Super. Ct. Aug. 12, 2011), *aff'd,* No. 12–P–361, 2013 WL 1715307 (Mass. App. Ct. Apr. 22, 2013); *see U.S. ex rel. Provuncher v. Angioscore, Inc.*, No. 09–12176–RGS, 2012 WL 1514844, at *7-8, *8 n.10 (D. Mass. May 1, 2012) (dismissing WTPP claim because a complaint about a decision to market a

product despite concerns about safety "does not implicate the public policy exception" when there is no evidence that the product was "indeed defective").

Importantly, while Plaintiff allegedly raised "patient safety concerns" during the routine execution of his role as a GMP Operational Quality Manager (Compl. ¶¶ 6, 74-75, 79, 81, 107), he does not, and indeed cannot, allege that his concerns were substantiated, or that the public was at-risk. In fact, Plaintiff acknowledges that the *FDA later approved the drug product batches* he allegedly flagged. *Id.* ¶ 89. Further, even accepting Plaintiff's allegation that Vertex accepted "non-conforming material" (*id.* ¶ 128(d)), conclusorily describing the product as "non-conforming material" does not show that there was an imminent threat of harm to the public. *Nelson*, 2011 WL 4056320, at *6 ("Generalized concerns that activities of the employer, could, possibly, result in alleged harm to health or safety are insufficient [to establish a well-defined public policy]."). Thus, to the extent Plaintiff purports to base his WTPP claim in Count I on generalized health and safety concerns, that argument fails.

**B.      Count VI Fails Because Plaintiff Did Not Satisfy the Statutory Requirement of Providing a Written Rebuttal.**

Count VI should be dismissed because Plaintiff expressly failed to submit a written rebuttal to his PIP, as required under M.G.L. c. 149, § 52C and confirmed by *Meehan v. Medical Information Technology, Inc.* 488 Mass. 730 (Mass. 2021). Specifically, Section 52C provides if, after the employer has placed disciplinary documentation in an employee's record, "there is a disagreement with any information contained in a personnel record . . . the employee may submit *a __written__ statement explaining the employee's position* which shall thereupon be contained therein and shall become a part of such employee's personnel record . . . ." (emphasis added).

In *Meehan*, the SJC ruled that an employee's exercise of his statutory right to file a written rebuttal for the personnel file is legally guaranteed by Section 52C, and therefore, "termination

8

from employment for the exercise of this legally guaranteed right fits within the first public policy exception to employment at will[.]" 488 Mass. at 735. The *Meehan* decision makes clear that the public policy exception to at-will employment under Section 52C applies when the employee submits a written rebuttal. *Id.* at 740.

Plaintiff, however, alleges only that he verbally expressed disagreement with his PIP (Compl. ¶ 107) to Human Resources, and that he ***intended*** to later file a written rebuttal to his PIP (*id.* ¶¶ 112, 174), but importantly, he ***never submitted*** a written rebuttal to his PIP prior to his resignation. As such, he did not engage in conduct that is statutorily protected by Section 52C. Thus, he has no grounds to assert a WTPP claim under Section 52C and Count VI must be dismissed.

**C.    Plaintiff's WTPP Claims Fail Because Vertex Did Not Constructively Terminate Plaintiff's Employment.**

Even putting these pleading deficiencies aside, Plaintiff fails to adequately plead that he was constructively discharged as required for his WTPP claims. In order for Plaintiff's voluntary resignation to be considered constructive discharge, Plaintiff must adequately plead that Vertex imposed "working conditions so intolerable that a reasonable person would feel compelled to forsake his job rather than to submit to looming indignities." *Landrau-Romero v. Banco Popular de P.R.*, 212 F.3d 607, 612-13 (1st Cir. 2000) (internal quotation marks and citation omitted). Constructive discharge "claim[s] require[] a showing of harassment that is ***more severe than is required for a hostile work environment claim*** and may occur when an employer 'effectively prevents an employee from performing her job.'" *Sauer v. Belfor USA Grp., Inc.*, 205 F. Supp. 3d 209, 219 (D. Mass. 2016) (citing *Luciano v. Coca-Cola Enters., Inc.*, 307 F. Supp. 2d 308, 320 (D. Mass. 2004).) (emphasis added). "The standard for a constructive discharge is 'an objective one,

9

it cannot be triggered solely by an employee's subjective beliefs, no matter how sincerely held.'" *Stratton v. Bentley Univ.*, 113 F.4th 25, 38 (1st Cir. 2024) (citation and quotations omitted).

Plaintiff here provides no facts establishing that Vertex prevented him from performing his job duties or that his working conditions were "so severe and oppressive" that a reasonable person in his position would have felt compelled to resign. *Ara v. Tedeschi Food Shops, Inc.*, 794 F. Supp. 2d 259, 264 (D. Mass. 2011); *Marrero v. Goya of P.R., Inc.*, 304 F.3d 7, 28 (1st Cir. 2002). Instead, Plaintiff alleges that his March 20, 2025, ***voluntary resignation*** constituted a constructive discharge because on March 7, 2025, he was placed on a 60-day PIP. Compl. ¶¶ 104, 112, 114-116, 125. However, courts routinely hold that placement on, and/or required compliance with, a PIP does ***not*** rise to the level of a work environment "so severe and oppressive" to constitute constructive discharge. *See Aulisio v. Baystate Health Sys., Inc.*, No. 11–30027–KPN, 2012 WL 3947738, at *9-10 (D. Mass. Sept. 7, 2012) (finding no constructive discharge despite plaintiff's view that her PIP was a disciplinary action because "by definition" a PIP is "an improvement plan designed to help [her] meet job expectations" and did not result in any material disadvantage in her employment); *Luciano*, 307 F. Supp. 2d at 321 ("At a minimum, a reasonable person would have expected [Plaintiff] to [perform under the PIP] before tendering h[is] resignation."). Similarly, Plaintiff's placement on a 60-day PIP reflects that Vertex was providing Plaintiff with an opportunity to improve and meet his job expectations before considering any further action. Accordingly, Counts I and VI must be dismissed because Plaintiff fails to adequately plead he was constructively discharged.

### III.   PLAINTIFF FAILS TO STATE A CLAIM FOR FRAUD (COUNTS II & III)

#### A.   Legal Standards for Fraud Claims.

To state a claim for fraud or fraudulent misrepresentation, Plaintiff must plausibly allege that Vertex: (1) made a false representation of a material fact with knowledge of its falsity; (2)

made this statement for the purpose of inducing action thereon; and (3) that he relied upon the representation as true and then acted upon it; (4) causing him damage. *Balles v. Babcock Power Inc.*, 476 Mass. 565, 573 (Mass. 2017) (stating elements for fraud); *Masingill v. EMC Corp.*, 449 Mass. 532, 540 (2007) (stating elements for fraudulent misrepresentation).

Further, under Fed. R. Civ. P. 9(b), a party alleging fraud must "state with particularity the circumstances constituting fraud[,]" including the "time, place, and content of the alleged false or fraudulent representation." Fed. R. Civ. P. 9(b); *Robert Reiser & Co. v. Scriven*, 130 F. Supp. 3d 488, 494 (D. Mass. 2015) (citing *Epstein v. C.R. Bard, Inc.*, 460 F.3d 183, 190-91 (1st Cir. 2006)). This heightened pleading standard "preclude[s] the use of a groundless fraud claim as a pretext to using discovery as a fishing expedition [and] safeguard defendants from frivolous charges that might damage their reputations." *Robert Reiser & Co.*, 130 F. Supp. 3d at 494.

Count II should be dismissed pursuant to Rule 12(b)(6) and Rule 9(b).[3] Count III should be dismissed pursuant to Rule 12(b)(6).

### 1.    Plaintiff Has Not Sufficiently Alleged That Vertex Knowingly Misrepresented its Intention to Sponsor His Green Card (Count II).

Plaintiff alleges that during the hiring process, Vertex misrepresented its intention to sponsor Plaintiff's green card. Compl. ¶¶ 135-139. However, Plaintiff has not established any basis for his allegation that Vertex promised to act while knowing at the time that it would not act. *See Robert Reiser & Co.*, 130 F. Supp. 3d at 494 (finding employee failed to sufficiently plead a claim

---

[3] Motions to dismiss for failure to comply with Rule 9(b)'s heightened pleading requirement are properly characterized as a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6). *JRA Architects & Project Managers, P.S.C. v. First Fin. Grp., Inc.*, No. CV 08-1285 (FAB/MEL), 2008 WL 11381412, at *1 n.2 (D.P.R. Sept. 15, 2008), *report and recommendation adopted*, 2009 WL 10688978 (D.P.R. Apr. 13, 2009); *see* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, *FEDERAL PRACTICE AND PROCEDURE* § 1300 (3d ed. 2004) ("Since Federal Rule 9(b) does not expressly authorize a motion for its enforcement, a challenge to a pleading based on insufficient particularization of the circumstances of an alleged fraud typically is packaged with a motion to dismiss (Federal Rule of Civil Procedure 12(b)(6))[.]").

for intentional misrepresentation because there were no allegations that the company's statement of future intention misrepresented the actual intention of the company at the time it was made); *Iron Mountain Inc. v. Carr*, No. 05–10890–RCL, 2006 WL 6602266, at *9-10 (D. Mass. Mar. 13, 2006) (recommending dismissal of fraud claim because single conclusory statement to the effect that "[i]n hindsight it is apparent that the plaintiffs knew their statements . . . were false when made" was insufficient to prove the statements were made falsely because "the complaint must provide some factual support for the allegations of fraud" (alterations in original) (internal quotation marks omitted)).

In fact, Plaintiff's allegations ***undermine*** his fraud claims, including Plaintiff's admission that Vertex took steps to address Plaintiff's immigration status. For example, Plaintiff alleges that Vertex filed an LCA for him (Compl. ¶ 12); responded to USCIS's RFE (*id.* ¶ 16); pursued EB-2-NIW for him (*id.* ¶ 52); and followed up with him about the completion of his EB-2-NIW questionnaire (*id.* ¶ 54). He even notes that Vertex ceased efforts to support Plaintiff's immigration status only ***after*** his resignation. *Id.* ¶ 119. These allegations contradict any allegation that Vertex knowingly misrepresented that it intended to sponsor Plaintiff for a green card.

In addition to Count II being implausible, Plaintiff fails to state with particularity – as is required – what Vertex actually said to misrepresent itself. Other than to assert in conclusory terms that Vertex verbally promised immediate green card sponsorship, Plaintiff provides no information as to the specific time, place, content, or context surrounding the alleged representations. Compl. ¶¶ 9, 135. *See Rowayton Venture Grp. LLC v. McCarthy*, No. CV 19-12240-FDS, 2020 WL 4340985, at *4 (D. Mass. July 28, 2020) (describing particularity requirements under rule 9(b)).

Count II and its mere conclusory assertions are insufficient to satisfy *Twombly's* plausibility standard, let alone the heightened pleading standard required for fraud claims. Therefore, this Court should dismiss Count II for failure to satisfy Rules 12(b)(6) and 9(b).

**2.      Plaintiff Fails to Allege that He Relied on Vertex's Alleged Misrepresentations on His Immigration Forms as Truth (Count III).**

Plaintiff further fails to plausibly plead the reliance element of his fraud claim in Count III. While Plaintiff has alleged that Vertex misrepresented his employment classification, code and duties on immigration forms to the U.S. DOL and USCIS[4], importantly, he has failed to allege that he relied upon these supposed misrepresentation as true and then acted upon them to his detriment. Compl. ¶¶ 142-148. Rather, Plaintiff alleges that he explicitly disagreed with, or at a minimum doubted, Vertex's reasoning for including certain language in these immigration forms. For instance, Plaintiff alleges that he "inquired" about the employment classification code used in his LCA filed with the DOL (*id.* ¶ 14), presumably because he believed Vertex could use a different classification code to describe his role at Vertex (*id.* ¶ 12). He also alleges that Vertex altered responses submitted to USCIS "without consent" (*id.* ¶ 16) implying that he was unaware of (and/or did not approve) such alleged misrepresentations. Under these circumstances, Plaintiff could not have relied upon Vertex's alleged misrepresentations on his immigration forms as true such that he then acted upon those misrepresentations to his detriment. Count III, accordingly, should be dismissed for failing to state a claim under Rule 12(b)(6).

**B.      The Fraudulent Inducement Claim in Count II Must be Separately Dismissed Because It Is Not a Recognized Cause of Action in Massachusetts.**

Count II should separately be dismissed on its face because it is well-settled that "[f]raudulent inducement of employment is not a recognized action in Massachusetts[.]" *Coyle v.*

---

[4] Vertex disagrees that it misrepresented Plaintiff's classification, code and duties on immigration forms to the U.S. DOL and USCIS, but is not moving on those allegations for purposes of its motion to dismiss.

*Kittredge Ins. Agency, Inc.*, No. 4:12-CV-40014-TSH, 2014 WL 1330859, at *6 (D. Mass. Mar. 28, 2014). Instead, such a claim must be analyzed under the elements of common fraud law set forth in *Balles*, 476 Mass. at 573 and *Masingill*, 449 Mass. at 540, in combination with the specificity requirements set forth in Fed. R. Civ. P. 9(b). As described in Sec. III(A)(1), *supra*, Count II fails under that analysis.

## IV.    PLAINTIFF FAILS TO STATE CLAIMS UNDER 42 U.S.C. § 1981 (COUNT IV)

In Count IV, Plaintiff purports to assert three distinct claims under 42 U.S.C. § 1981 based on his "Indian race," including "Racial Discrimination, Hostile Work Environment, and Retaliation."[5] Compl. ¶¶ 150-157. Specifically, he alleges that Vertex discriminated against him by treating him less favorably than his white American colleagues, creating a hostile work environment, and retaliating against him for complaining about discriminatory treatment. *Id.* These claims fail.

### A.    Plaintiff Has Not Plausibly Alleged Facts Demonstrating a Hostile Work Environment.

In order to establish a hostile work environment claim under 42 U.S.C. § 1981, Plaintiff must show that: (1) he is a member of a protected class; (2) he experienced uninvited harassment; (3) the harassment was racially-based; (4) the harassment was so severe or pervasive as to create an abusive work environment; and (5) the harassment was objectively and subjectively offensive. *Prescott v. Higgins*, 538 F.3d 32, 42 (1st Cir. 2008); *Hall v. FMR Corp.*, 667 F. Supp. 2d 185, 201 (D. Mass. 2009) ("The elements of a hostile racial environment claim under Section 1981 are identical to those under Title VII."). Putting aside, for purposes of this motion to dismiss, whether

---

[5] Although Plaintiff refers to his "Indian race" as the basis for his Section 1981 claims, his allegations of discrimination sound in national origin discrimination. To the extent he purports to allege national origin discrimination, such claims are not actionable under Section 1981. *Hall v. FMR Corp.*, 559 F. Supp. 2d 120, 126 (D. Mass. 2008). Title VII of the Civil Rights Act provides the appropriate causes of action for Plaintiff's claims for national origin discrimination. Plaintiff failed to exhaust his administrative remedies by filing a charge of discrimination with the EEOC or equivalent state agency. As a result, he attempts to recast Title VII claims into claims under Section 1981.

Plaintiff can show that he experienced uninvited harassment, at a minimum Plaintiff has failed to plausibly allege that any such alleged harassment was racially motivated, that it was severe and pervasive, or that it was objectively and subjectively offensive.

### 1. Plaintiff Offers No Evidence of Race-Based Harassment.

As a preliminary matter, Plaintiff fails to provide any factual basis for his conclusory allegation that he suffered a hostile work environment based on his Indian race. Compl. ¶ 151. Indeed, he does not allege a single instance of racially motivated harassment in the entire Complaint. As such, he cannot satisfy the third element of his hostile work environment claim. *Hall*, 667 F. Supp. 2d at 202 (finding "the absence of evidence that any of the perceived slights … had a connection to [plaintiff's protected status]" as fatal to hostile work environment claim); *see Salomon v. Mass. Housing Fin. Agency*, No. 22-cv-10181-ADB, 2023 WL 2588334 at *8 (D. Mass. Mar. 21, 2023) (finding no plausible allegations of racially motivated hostile work environment because plaintiff's allegations "lack any indication of race-based motivation"); *cf. Ortiz v. Fed. Bureau of Prisons*, 290 F. Supp. 3d 96, 106 (D. Mass. 2017) (allegations of "racially and sexually insensitive" signs along with other racially-charged remarks were sufficient to plead a hostile work environment).

### 2. The Alleged Conduct Was Not "Severe or Pervasive" Sufficient to Create an Objectively or Subjectively Abusive Working Environment.

Nor can Plaintiff establish the fourth or fifth elements of his hostile work environment claim. To make such a showing, Plaintiff must show that his "workplace [was] permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of . . . [his] employment and create an abusive working environment." *Quiles-Quiles v. Henderson*, 439 F.3d 1, 7 (1st Cir. 2006) (citations omitted) (alterations in original) (affirming hostile work environment judgment where plaintiff was subject to "constant ridicule about his

mental impairment."); *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993) (determination as to whether a work environment is "hostile" or "abusive" includes "the frequency of the discriminatory conduct; its severity; [and] whether it is physically threatening or humiliating[.]"). "[A]ny abuse must be both objectively offensive (as viewed from a reasonable person's perspective) and subjectively so (as perceived by the plaintiff)." *Alvarado v. Donahoe*, 687 F.3d 453, 461 (1st Cir. 2012).

Plaintiff bases his hostile work environment claim on the way he was managed and how his performance was evaluated. Compl. ¶¶ 23, 49, 55, 92, 107. He also alleges that Vertex told him his visa was at risk if he did not meet performance expectations,[6] and encouraged him on one occasion to emulate "certain Indian colleagues she highly respected." Compl. ¶¶ 41, 153-154. There are no allegations of discriminatory ridicule, repeated instances of severe discriminatory conduct, or anything else that even remotely suggests that Plaintiff was subject to "severe or pervasive" harassment and an objectively (or subjectively) abusive working environment. *See Flowers v. FLLAC Educ. Collaborative*, No. 18-1170, 2019 WL 10982432, at *2-3 (1st Cir. 2019) (affirming dismissal of hostile work environment claim because plaintiff "failed to make the requisite allegations that would permit a reasonable inference that the [harassment was sufficiently severe or pervasive to create an abusive work environment and alleged conduct was both objectively and subjectively offensive]" because the alleged conduct was "not explicitly racial in nature") (internal quotations and citation omitted); *see Colon-Fontanez v. Municipality of San Juan*, 660 F.3d 17, 44 (1st Cir. 2011) (affirming district court's finding that employee could not show abusive work environment where supervisor allegedly regularly refused to meet with the employee, yelled at her in front of co-workers, failed to act to prevent or deter other employees from making

---

[6] As described above, Plaintiff expressly pleads that Vertex's U.S. Immigration Policy required him to meet certain performance standards for continued immigration status support.

16

derogatory comments about her, and limited employee's movements around the workplace because "[w]hile these facts certainly indicate an uncomfortable and tense working relationship between [the plaintiff and her manager], they are not sufficiently severe or pervasive to constitute a hostile work environment"); *c.f. Wilson v. Moulison N. Corp.*, 691 F. Supp. 2d 232, 235 (D. Me. 2010) (subjection to multiple racially insensitive and derogatory comments using the "N" word sufficiently severe and pervasive), *aff'd,* 639 F.3d 1(1st. Cir. 2011). Given these legal standards, a reasonable person in Plaintiff's position would not find these alleged working conditions "abusive." *See Hall*, 667 F. Supp. 2d at 201 (if alleged conduct is "not so severe or pervasive that a reasonable person would find it hostile or abusive, no section 1981 . . .  right is implicated.").

Based on the clear deficiencies in the hostile work environment claim, it must be dismissed.

## B.    Plaintiff Does Not State a Claim for Race Discrimination.

Section 1981 disparate treatment claims are analyzed under the same framework as Title VII claims. *Prescott*, 538 F.3d at 40. Plaintiff must plausibly allege: (1) he was a member of a protected class;[7] (2) he was qualified for his position; (3) he was subjected to an adverse employment action; and (4) a causal connection between his membership in a protected class and the adverse employment action. *Bhatti v. Trs. of Bos. Univ.*, 659 F.3d 64, 70 (1st Cir. 2011). Notably, to prevail on such a claim, "a plaintiff must initially plead and ultimately prove that, but for race, [he] would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*, 589 U.S. 327, 341 (2020).

For the same reasons stated *supra*, Sec. IV(A)(1), Plaintiff's disparate treatment claim is fatally flawed because Plaintiff has not alleged facts demonstrating that Vertex held racially

---

[7] As noted above, Section 1981 is not a permissible avenue for raising a national origin discrimination claim.

discriminatory animus against Indian employees. Instead, Plaintiff alleges that Vertex "highly respected" his Indian colleagues. Compl. ¶ 41.

Further, Plaintiff alleges that the same individuals who hired him, Ms. Lee and Ms. Miles (Compl. ¶ 9), later discriminated against him based on his race (*see id.* ¶¶ 151-155). Plaintiff's allegation that the same individuals were responsible for both hiring and allegedly constructively terminating Plaintiff belies any inference of discrimination. *See LeBlanc v. Great Am. Ins. Co.*, 6 F.3d 836, 847 (1st Cir. 1993) (noting plaintiff "points to nothing in the record to suggest" why his employer who approved his transfer "would develop an aversion" against his protected class less than two years later) (citing *Proud v. Stone*, 945 F.2d 796, 797 (4th Cir. 1991) ("[I]n cases where the hirer and the firer are the same individual and the termination of employment occurs within a relatively short time span following the hire, a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer.")). Because the Complaint fails to plausibly allege that Vertex possessed racial animus, the race discrimination claim should be dismissed.

### C.      Plaintiff Fails to State a Claim for Retaliation.

To state a claim for retaliation under Section 1981, Plaintiff must plausibly allege that: (1) he engaged in statutorily protected activity; (2) he suffered an adverse employment action; and (3) the protected conduct and adverse employment action were causally connected. *Pina v. Child.'s Place*, 740 F.3d 785, 800-01 (1st Cir. 2014). Protected activity consists of actions taken to oppose or report racial discrimination. *Cabi v. Bos. Child.'s Hosp.*, 161 F. Supp. 3d 136, 157 (D. Mass. 2016). As here, where Plaintiff fails to "plausibly allege that" an adverse employment action "was caused by [his] oppositional, protected conduct" his asserted retaliation claim necessarily fails. *Frith v. Whole Foods Mkt., Inc.*, 38 F.4th 263, 277-78 (1st Cir. 2022).

18

1. **Plaintiff Does Not Allege That He Engaged in Protected Activity.**

Plaintiff's allegations that he reported concerns about product quality and safety and faced "indifference" and "hostile and disparate treatment" by his manager (Compl. ¶¶ 28, 35) do not constitute protected activity under Section 1981 because they are unrelated to race discrimination. *Cf. Cabi*, 161 F. Supp. 3d at 157 (finding that plaintiff engaged in protected activity by reporting a series of explicit and derogatory comments regarding plaintiff's race in the workplace). Absent such allegations of racial discrimination, Plaintiff fails to establish that he engaged in protected activity under Section 1981.

2. **Plaintiff Does Not Sufficiently Allege a Causal Connection Between Any Alleged Protected Activity and Adverse Employment Action.**

Even if Plaintiff had sufficiently alleged that he engaged in protected activity—which he did not—Plaintiff does not plausibly allege that he suffered an adverse employment action due to any protected activity. There are no factual allegations establishing that any of Defendant's alleged adverse actions, such as Plaintiff's poor performance review, were causally related to any alleged report of discrimination. *See James v. Cox*, No. 21-CV-12098-AK, 2022 WL 2905367, at *7 (D. Mass. July 22, 2022) (dismissing retaliation claim because plaintiffs failed to allege facts connecting protected activity to adverse action). Notably, Plaintiff attributes his allegedly "downgraded performance rating" and "fabricated PIP" to having raised concerns about product quality and safety rather than any report of race discrimination. *See* Compl. ¶¶ 68, 70, 74, 81, 131-132. The retaliation claim therefore fails and the Section 1981 claims should be dismissed.

V. **PLAINTIFF FAILS TO STATE A CLAIM UNDER THE TRAFFICKING VICTIMS PROTECTION REAUTHORIZATION ACT (COUNT V)**

Plaintiff's Trafficking Victims Protection Reauthorization Act ("TVPRA") claim is even more implausible. TVPRA is a human trafficking statute designed to combat "severe forms of exploitation." *Taylor v. Salvation Army Nat'l Corp.*, 110 F.4th 1017, 1030 (7th Cir. 2024) (internal

quotation marks omitted). TVPRA cases "typically involve certain hallmarks, such as squalid or otherwise intolerable living conditions, extreme isolation (from family and the outside world), threats of inflicting harm upon the victim or others …, and exploitation of the victim's lack of education and familiarity with the English language." *Claros v. Marvin's Refrigeration Corp.*, 800 F. Supp. 3d 391, 398 (N.D.N.Y. 2025) (quoting *Muchira v. Al-Rawaf*, 850 F.3d 605, 620 (4th Cir. 2017)) (internal quotations omitted). The statute was not designed to address routine employment disputes. *See Khalid v. Microsoft Corp.*, 409 F. Supp. 3d 1023, 1034 (W.D. Wash. 2019) ("The TVPRA was passed by Congress to reach cases of modern-day human trafficking[.]"). Even under the broadest reading of the case law, Plaintiff, a highly sophisticated professional (*see* Compl. ¶ 8), has not alleged that he was trafficked into forced labor under the TVPRA. Indeed, a finding to the contrary would be an affront to the true victims of trafficking.

In order for Plaintiff to plead a TVPRA claim, he must plausibly allege that: (1) Vertex obtained his labor or services, (2) by one of the enumerated unlawful means in the statute, and (3) that Vertex did so knowingly. 18 U.S.C. § 1589(a); *Yassin v. AR Enters., LLC*, No. 16-cv-12280, 2017 WL 6625027, at *2 (D. Mass. Dec. 28, 2017). There are four enumerated unlawful means under the TVPRA: (1) "force, threats of force, physical restraint, or threats of physical restraint to [Plaintiff]," (2) "serious harm or threats of serious harm to [Plaintiff]," (3) "abuse or threatened abuse of law or legal process," and (4) "any scheme, plan, or pattern intended to cause [Plaintiff] to believe that, if [he] did not perform such labor or services, [Plaintiff] would suffer serious harm or physical restraint." 18 U.S.C. § 1589(a). Moreover, Section 1589 contains "an express scienter requirement," meaning that Plaintiff must adequately plead the existence of evidence from which a jury could find that Vertex intended to cause Plaintiff to believe he would suffer serious harm.

*See United States v. Calimlim*, 538 F.3d 706, 711 (7th Cir. 2008) ("The presence of a scienter element to the offense makes the [plaintiff's] burden very difficult to carry.").

Plaintiff's use of the word "threat" within his Complaint does not entitle him to protections under the TVPRA. Rather, his allegation that his manager "threatened" him when she told him "his visa was at risk if he did not meet management's [performance] expectations[]" (Compl. ¶¶ 40, 164) was a "permissible warning[] of adverse but legitimate consequences" of poor performance. *Headley v. Church of Scientology Int'l*, 687 F.3d 1173, 1180 (9th Cir. 2012) (internal quotation marks omitted); *see Taylor*, 110 F.4th at 1030-31 (a "legitimate consequence" of the terms of a program and a "legitimate warning" about the consequences of actions did not support a forced labor claim but were "simply components of participation in [defendant's] program"); *see also Walia v. Veritas Healthcare Sols., LLC*, No. 13 Civ. 6935 (KPF), 2015 WL 4743542, at *4 (S.D.N.Y. Aug. 11, 2015) ("[C]ourts 'must distinguish between improper threats or coercion and permissible warnings of adverse but legitimate consequences'") (internal citation omitted).

Further, Plaintiff's allegation that "Vertex schemed to make him believe he would suffer the serious harm of losing his immigration status" is facially flawed. Compl. ¶ 166. Plaintiff has alleged that Vertex's "scheme" was rooted in requiring him to comply with Vertex's performance standards; he has not, however, alleged that the "scheme" *forced* him to continue to work for Vertex. Nor has he alleged facts nearing the severe "hallmarks" of a TVPRA case. *Claros*, 800 F. Supp. 3d at 398; *cf. Calimlim*, 538 F.3d at 708-09 (defendants engaged in an actionable scheme under TVPRA because they took their victim's passport, forced her to work 16-hour days, seven days a week for 19 years, rarely paid her, constricted her freedom of movement, never attempted to legalize her status in the U.S., and gave her warnings that they might report her). Indeed,

21

Plaintiff's allegation that he was constructively discharged from Vertex—against his will—belies any allegation that he was forced to continue working for Vertex. Compl. ¶¶ 112, 125, 157, 169.

Given these circumstances, and the absence of any evidence of scienter, Plaintiff cannot state a TVPRA claim.

## VI.     THE PROMISSORY ESTOPPEL CLAIM FAILS (COUNT VII)

To state a claim for promissory estoppel, Plaintiff must plausibly allege that: (1) Vertex made an unambiguous promise intended to induce him to rely on the promise; (2) he reasonably relied upon that representation; and (3) his reliance was to his detriment. *Dexter v. Dealogic, LLC*, 390 F. Supp. 3d 233, 245 (D. Mass. 2019).

Plaintiff cannot establish any of the elements of his promissory estoppel claim.  Regarding the first two elements, he does not plausibly allege that Vertex promised unconditional green card sponsorship or that he reasonably relied on any such representation. In fact, he expressly pleads that Vertex maintained a clear policy requiring him to meet certain performance expectations as a condition of employment and green card sponsorship, as any company would be expected to maintain. Compl. ¶ 31. According to the Complaint, Plaintiff was aware of these express conditions in or around April 2023 at the latest, and he continued to work for the Company for nearly two more years with full awareness of the policy, during which time he received frequent criticism regarding his performance. *Id.* ¶¶ 9-11, 31-32, 116.

Plaintiff also fails to satisfy the third element of a promissory estoppel claim because he does not adequately demonstrate that he relied on Vertex's alleged promise of "immediate" sponsorship to his detriment. In fact, he alleges that Vertex asked him to remain employed with Vertex long-term, but he ***resigned*** from his employment before the immigration process could be completed. *Id.* ¶¶ 33, 114-116. Based on the express allegations, it was not Vertex's alleged "promise" that caused Plaintiff harm, but rather his own decision to end his employment instead

22

of attempting to comply with Vertex's policies. *See Daniels v. Alvaria, Inc.*, No. 23-cv-10419-DJC, 2024 WL 758172 at \*8-9 (D. Mass. Feb. 23, 2024) (dismissing promissory estoppel claim because plaintiff's complaint "does not permit the inference that [she] relied upon [defendant]'s promises to pay her to her detriment" given she remained employed despite being told she would not be paid commissions); *Gould v. Bank of N.Y. Mellon*, 123 F. Supp. 3d 197, 204 (D. Mass. 2015) (dismissing promissory estoppel claim because "there are still no facts suggesting that Plaintiffs suffered any detriment . . . the [plaintiffs are in] the exact position they were in prior to any negotiations with [defendant]."). Moreover, Vertex carried through on its alleged promise to immediately sponsor his green card, which further undermines any allegation of detrimental reliance. Plaintiff expressly pleads that after he accepted the job offer, Vertex engaged and paid outside counsel to submit the necessary paperwork so that Plaintiff would be able to work lawfully in the United States. Compl. ¶¶ 12, 14, 16, 17, 43, 54, 80. It was only later, when Plaintiff failed to comply with the Company's U.S. Immigration Policy, that Vertex paused its sponsorship for one year. Compl. ¶¶ 31, 33.

The promissory estoppel claim must therefore be dismissed.

## VII.    THE INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM FAILS AS A MATTER OF LAW AND FOR FAILURE TO STATE A CLAIM (COUNT VIII)

### A.    Plaintiff's Claim for IIED Is Barred By the Massachusetts Workers' Compensation Act.

Plaintiff's claim for intentional infliction of emotional distress ("IIED") is barred by the exclusivity provision of the Massachusetts Workers Compensation Act. *Rogers v. Nstar Elec.*, 389 F. Supp. 2d 100, 110 (D. Mass. 2005) (citing M.G.L. c. 152, § 24); *Doe v. Purity Supreme, Inc.*, 422 Mass. 563, 567 (1996)); *Tennaro v. Ryder Sys., Inc.*, 832 F. Supp. 494, 500 (D. Mass. 1993).

23

To the extent Plaintiff alleges that Vertex engaged in conduct giving rise to a claim for IIED after his employment ended, that alleged conduct is also preempted by the Workers' Compensation Act because it relates to Plaintiff's employment relationship with Vertex. *See Cavicchi v. Raytheon Co.*, 16 F. Supp. 3d 4, 7 (D. Mass. 2014) ("Plaintiff's claim that the behavior giving rise to his IIED claim occurred after separation ignores the fact that the defendant's alleged conduct 'substantially took place while the plaintiff was an employee,' and concerned the plaintiff's employment."). Accordingly, Plaintiff's IIED claim must be dismissed.

**B.      Plaintiff Further Fails to Sufficiently Allege Facts that Support an IIED Claim.**

Even if the IIED claim was not barred—which it is as a matter of law—Plaintiff cannot show that Vertex's alleged conduct toward him meets the objective reasonable person standard of "extreme and outrageous" conduct to sufficiently ground an IIED claim. *Mercurio v. Town of Sherborn*, 287 F. Supp. 3d 109, 125 (D. Mass. 2017) ("[T]o prevail on a claim of [IIED], a plaintiff must show [among other things] that . . . the defendant's conduct was extreme and outrageous to the extent it was utterly intolerable in a civilized society . . . ."). Courts have acknowledged that this requirement is "notoriously difficult to establish." *Bazinet v. Thorpe*, No. CV 14-40082-TSH, 2014 WL 13109876, at *4 (D. Mass. Dec. 9, 2014) (citation omitted). Plaintiff's bald allegations of Vertex's acts of "coercion, retaliation, and humiliation" (Compl. ¶ 190), along with his allegations of public reprimands by senior leadership due to his poor performance (Compl. ¶ 190(b)), denial of Plaintiff's request to transfer to another internal position (*id.* ¶ 190(c)), and fabricated PIP (*id.* ¶ 190(d)) are "woefully inadequate" and simply do not amount to "extreme and outrageous" conduct sufficient to state a claim for IIED. *See Corrado v. N.Y. Unified Ct. Sys.*, 163 F. Supp. 3d 1, 7-8, 27 (E.D.N.Y. 2016) (dismissing IIED claim because allegations that supervisor began retaliating against employee for making complaints of sexual harassment by reprimanding her regularly, criticizing her work product, giving her pretextual negative performance reviews,

24

unreasonable workloads, and denying her request to be transferred to another internal position were "woefully inadequate to maintain a claim for [IIED]."); *Fountain v. City of Methuen*, 630 F. Supp. 3d 298, 306, 319  (D. Mass. 2022) (granting judgment on the pleadings for defendant on IIED claim because "insulting remarks" and "public criticism" were not extreme and outrageous conduct sufficient to establish IIED) (citing *Tetrault v. Mahoney, Hawkes & Goldings*, 425 Mass. 456, 466 (1997) (noting that "mere insults, indignities, threats, annoyances, petty oppressions or other trivialities" are not sufficient to establish IIED)); *McConney v. City of Worcester*, NO. 03-CV-11920-JLA, 2006 WL 8458061, at *8 (D. Mass. Aug. 15, 2006) (supervisor's alleged conduct towards employee, "[a]lthough certainly rude and unprofessional . . . is more similar to common workday insults and threats than conduct that would be considered intolerably in a civilized society"); *see Burns v. City of Worcester*, 772 F. Supp. 3d 109, 145-46 (D. Mass. 2025) (Guzman, J.) (dismissing IIED claim because plaintiff's claim that defendant fabricated allegation that he was on drugs while on fire duty with the knowledge about plaintiff's child custody and livelihood issues did not rise to the level of extreme and outrageous behavior). Accordingly, even if accepted as true, the allegations in the Complaint do not rise to the level of IIED and as such, Count VIII should be dismissed.

## **CONCLUSION**

Vertex respectfully requests that this Court grant its Motion to Dismiss Plaintiff's Complaint, with prejudice, and dismiss Counts I through VIII in their entirety.

DATED: February 10, 2026

Respectfully submitted,

VERTEX PHARMACEUTICALS, INC.

By Its Attorneys,


*/s/ Lynn A. Kappelman*

Lynn A. Kappelman (BBO No. 642017)
lkappelman@seyfarth.com
Christopher W. Kelleher (BBO No. 705508)
ckelleher@seyfarth.com
SEYFARTH SHAW LLP
Seaport East
Two Seaport Lane, Suite 1200
Boston, Massachusetts 02210-2028
Telephone:  (617) 946-4800
Facsimile:  (617) 946-4801

26

## CERTIFICATE OF SERVICE

I, Lynn A. Kappelman, hereby certify that on February 10, 2026, a true and accurate copy of the foregoing document was electronically filed through the Court's ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.


*/s/ Lynn A. Kappelman*
Lynn A. Kappelman