**Exhibit A**

**Exhibit A**

**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| KRANTHI SAGAR PACHIKORU, | |
| Plaintiff, | |
| v. | Civil Action No: 4:25-cv-40184-MRG |
| VERTEX PHARMACEUTICALS INC., | |
| Defendant. | |

**REPLY IN SUPPORT OF DEFENDANT'S MOTION
TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

The Opposition contains substantial defects, most significantly in its analysis and application of legal authority. This concise Reply does not address all the defects, but highlights several fundamental flaws impacting the viability of the FAC. While Plaintiff proceeds *pro se*, "dismissal remains appropriate when the complaint fails to suggest an actionable claim." *Woods v. Covidien LP*, No. CV 15-30094-MGM, 2016 WL 2733102, at *2 (D. Mass. May 10, 2016).

## I. THE OPPOSITION INTRODUCES AN UNFOUNDED THEORY OF THE CASE AND INTERPRETATION OF THE TVPRA

### A. Plaintiff Cannot Save His Claims By Combining Them Together.

Because Plaintiff does not plausibly allege facts that would establish the elements of any one of his claims, he alleges—for the first time in his Opposition—that, taken together, all the Counts in his FAC reflect an "integrated coercive scheme" supporting his TVPRA claim, and therefore should survive dismissal. Opp. 2. However, since these allegations were not raised in the FAC, they cannot be considered at the motion to dismiss stage. *See Redondo-Borges v. U.S. Dep't of Hous. & Urb. Dev.*, 421 F.3d 1, 7 n.2 (1st Cir. 2005). Even if these allegations could be considered at this stage, Plaintiff cannot save his claims, which have distinct legal elements, by cobbling them together in such fashion. Instead, Plaintiff must plausibly allege facts demonstrating entitlement to relief with respect to ***each*** individual cause of action. *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008). His failure to do so is dispositive of his FAC.

### B. Plaintiff's Citations to Legal Authority Undermine His TVPRA Claim.[1]

Plaintiff is a highly educated, skilled professional with prior experience navigating the U.S. immigration system as a sponsored employee. FAC ¶¶ 8, 11. Notwithstanding his skill and prior

---

[1] The Opposition repeatedly references the 2008 amendments to the TVPRA. Those amendments primarily expanded TVPRA protections for children and sex trafficking victims. They also expanded the definition of "forced labor" to account for situations where violators abuse the legal process to cause "serious harm," which may include psychological or other non-physical harm. 18 U.S.C. § 1589. Plaintiff cannot meet any element of a TVPRA claim. To find otherwise would drastically undermine the true purpose of the TVPRA, which is to combat "severe forms of worker exploitation." *Taylor v. Salvation Army Nat'l Corp.*, 110 F.4th 1017, 1030 (7th Cir. 2024) (citation modified).

experience, Plaintiff, in an effort to save his TVPRA claim, attempts to compare his situation to cases involving exploitation of particularly vulnerable workers. *See* Opp. 16-20. In *Yassin v. AR Enters.*, for example, the plaintiff experienced multiple threats of deportation in response to requests that he be paid for his labor, despite his ***inability to return safely to his home country*** due to ongoing conflict and environmental disaster. 2017 WL 6625027, at *1, 3 (D. Mass. Dec. 28, 2017). In *United States v. Rivera*, the defendants used threats of violence and deportation to force ***undocumented women into sex work***. 799 F.3d 180, 183–84 (2d Cir. 2015). Plaintiff alleges no comparable circumstances here. And his assertion that courts have "repeatedly applied §1589 to skilled and credentialed visa dependent workers" (Opp. 16) is unsupported, even by his own case law.[2] *See Adia v. Grandeur Mgmt., Inc.*, 933 F.3d 89, 91 (2d Cir. 2019) (involving a ***housekeeping attendant***, not a skilled professional); *United States v. Papantoniadis*, 165 F.4th 65, 75 (1st Cir. 2026) (undocumented ***kitchen workers*** subjected to criminal forced labor).

Indeed, Plaintiff fails to identify a single case holding that an individual in circumstances similar to his had a viable TVPRA claim.[3] *See U.S. v. Dann*, 652 F.3d 1160, 1169–70 (9th Cir. 2011) (requiring a TVPRA plaintiff to demonstrate "serious harm" sufficient to compel a reasonable person of *his* background and circumstances to continue working). The Court should reject his invitation to expand the TVPRA.

## II.    PLAINTIFF'S CITED LEGAL AUTHORITY FAILS TO SUPPORT HIS ARGUMENT THAT HE WAS CONSTRUCTIVELY DISCHARGED

Plaintiff concedes that whether he resigned is a threshold issue that impacts the viability of several claims, including Counts VI, VII, and IX. Opp. 2-3. He attempts to save his claims by

---

[2] *Chellen v. John Pickle Co.* did not involve a TVPRA claim at all. 446 F. Supp. 2d 1247, 1256 (N.D. Okla. 2006).
[3] Plaintiff also cites *Lyu v. Alfa Chemistry Inc.*, No. 23-CV-7951 (EK)(ST), 2025 WL 1093134 (E.D.N.Y. Apr. 13, 2025), for the proposition that Vertex "abuse[d] … [the] legal process." Opp. 18-19. However, *Lyu* is inapposite. There, the Court determined that the employer subjected the plaintiff to a punitive liquidated damages provision — which was unenforceable under New York law—if the plaintiff left the company. *Lyu*, 2025 WL 1093134, at *1, 12. There are no similar circumstances here.

2

arguing that his statement to his manager that "I will submit my resignation mostly,[4] today; if not tomorrow[]" was a "conditional email," not a resignation. Opp. 3. First, this argument is facially inaccurate. Plaintiff's statement of resignation was unequivocal and not conditioned on the occurrence of any event.

Moreover, the legal authority upon which Plaintiff relies for the proposition that he did not voluntarily resign (*see* Opp. 3-4) is inapposite. In *Forsythe v. Wayfair Inc.*, the First Circuit found that no "offer of resignation" occurred where an employee "merely inquired about a severance package[.]" 27 F.4th 67, 79 (1st Cir. 2022). Here, by contrast, Plaintiff not only offered to resign, but expressed his clear and unequivocal intent to do so. Plaintiff's reference to *Malone-Campagna v. Director of the Division of Employment Security*, 391 Mass. 399 (1984), is similarly unavailing. That case involved an examination of an unemployment compensation claim and whether the employee's termination was "voluntary without good cause attributable to the employer within the meaning of G.L. c. 151A, § 25(e)(1)[.]" *Id.* at 400-01. This is not an unemployment case, and the statutory burdens and definitions applicable to such claims are irrelevant here.

Nor can Plaintiff establish he was constructively discharged based on his reassigned duties. *See* Opp. 3-4; FAC ¶ 118. His reference to *Parrett v. City of Connersville*, 737 F.2d 690 (7th Cir. 1984), highlights the weakness in his argument, as the facts in that case are starkly different from those alleged in the FAC. In *Parrett*, a police detective was permanently demoted to line captain, assigned no police duties in the new position, forced to sit in a windowless room that was formerly a storage closet, and spent his entire shift at his desk with nothing to do, which prompted a "nervous collapse." *Id.* at 693. Plaintiff has pled no comparable allegations here (simply alleging that he was

---

[4] "[M]ostly" appears to be a typo more appropriately read as "most likely."

3

moved to a "slower-moving project" but also alleging that Vertex assigned him additional products, which required him to work "extended hours."). FAC ¶¶ 39, 118.

## III.    PLAINTIFF'S IMMIGRATION ARGUMENTS ARE LEGALLY INACCURATE

Plaintiff misunderstands and/or misrepresents the immigration process, which is another threshold issue impacting the viability of numerous claims, including Counts I, II, III, V, and VII.

Count I, for example, requires a plausible inference that Vertex knowingly hired a foreign national employee with approximately thirty months remaining on his H-1B authorization—*i.e.*, an employee who required employer sponsorship simply to begin work—only to deceive him regarding the possibility of future green card sponsorship. That inference, however, is untenable and unsupported by the FAC. Sponsoring an H-1B employee entails substantial upfront costs, mandatory government filing fees, additional wage-and-hour compliance obligations, and often, significant delays while the petition is adjudicated. It defies common sense to suggest Vertex voluntarily assumed those burdens to sponsor Plaintiff's H-1B authorization merely to misrepresent a discretionary, contingent decision about future permanent residence sponsorship.

Count II is similarly untenable. Plaintiff argues that Vertex relied on an improper occupational classification in the LCA and H-1B petition (FAC ¶¶ 191-192), which he alleges foreclosed his ability to qualify for an I-140 immigrant visa petition under the EB-2 National Interest Waiver ("NIW") category. As a threshold matter, this argument fails because USCIS reviewed and approved his H-1B petition, after they requested and received additional evidence from Vertex, thereby confirming the propriety of the occupational classification used. FAC ¶¶ 19-20. H-1B employers are subject to extensive statutory and regulatory obligations and bear the burden of establishing eligibility by a preponderance of the evidence, including by demonstrating that the offered position falls within the designated SOC code. *See Matter of Chawathe,* 25 I & N Dec. 369, 375–76 (AAO 2010). USCIS's approval necessarily reflects its determination that

Vertex satisfied that burden and used the appropriate classification. 20 C.F.R. §§ 655.715, 655.730. Moreover, the selection and attestation of the SOC code was an employer-driven determination required by federal law and subject to agency review, not a representation made to Plaintiff for the purpose of inducing reliance. 8 C.F.R. § 214.2(h).

Count II also fails because Plaintiff relies on a fundamental misstatement of the law governing NIW eligibility. His assertion that the SOC code used in a prior H-1B petition precluded a future EB-2 NIW filing is legally incorrect. NIW eligibility is expressly forward looking and evaluated under *Matter of Dhanasar* based on the applicant's future proposed endeavor and qualifications, not on employer-specific occupational classifications used in prior nonimmigrant petitions. 26 I & N Dec. 884, 888–89 (AAO 2016). No reasonable individual could rely on a nonimmigrant occupational classification as a representation concerning eligibility for a future NIW, particularly where NIW eligibility is independently and prospectively assessed based on a proposed future endeavor. *See* 8 U.S.C. § 1153(b)(2)(B).[5]

## IV.    "CAT'S PAW" CANNOT SAVE THE DISCRIMINATION CLAIM (COUNT III)

Plaintiff erroneously attempts to invoke "cat's paw" theory (Opp. 11) to save his disparate treatment claim. *See Brandt v. Fitzpatrick*, 957 F.3d 67, 79 (1st Cir. 2020) ("If an employee's

---

[5] Plaintiff makes many other misrepresentations and/or misstatements regarding the immigration process. With respect to his promissory estoppel claim, for instance, he materially oversimplifies the employment-based green card process. Employment-based permanent residence may proceed through multiple pathways, including the PERM labor certification process and the NIW, the latter of which bypasses PERM entirely and permits self-petitioning. *See Matter of Rajah*, 25 I & N Dec. 127, 131 n.5 (BIA 2009); 20 C.F.R. § 656.17; *see also* 8 U.S.C. § 1153(b)(2)(B). Before even requesting a prevailing wage determination (Form ETA-9141), an employer must draft a detailed green card job description, identify minimum qualifications, and confirm that the employee met those requirements at the time of hire, often requiring employment verification from prior foreign employers. 20 C.F.R. § 656.17 Only then may an employer initiate the prevailing wage request, which itself often takes four to six months for adjudication. *See Processing Times Update Schedule*, U.S. DEP'T OF LAB., https://flag.dol.gov/processingtimes (last visited May 7, 2026). Following issuance of a prevailing wage, the employer must conduct mandatory recruitment to test the U.S. labor market and perform a layoff analysis covering the preceding six months. Any qualifying U.S. applicant or relevant layoff may independently bar PERM filing. Even if a PERM application is filed, certification remains discretionary and subject to Department of Labor scrutiny. *Matter of Rajah*, 25 I & N Dec. at 131; 20 C.F.R. § 656.17. Thus, there can be no guarantee that a PERM application or an NIW petition could be filed, much less approved, since the process is subject to multiple external and uncontrollable factors.

supervisor performs an act motivated by illegitimate animus that is *intended* … to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable under USERRA.") (citation modified); *Brnovich v. Democratic Nat'l Comm.*, 549 U.S. 647, 689 (2021) ("A cat's paw is a 'dupe' who was used by another to accomplish his purposes.") (citation omitted). Here, Plaintiff claims that Ms. Lee (his manager) "fabricated" his PIP (Opp. 11; FAC ¶ 248(a)-(b)), but he does not plausibly support any inference that such alleged fabrication was motivated by any illegitimate animus that was intended to or did cause some other "dupe" to engage in an adverse action against him. Further, he claims that Ms. Lee "fabricated the PIP by recharacterizing [his] protected whistleblowing and [internal compliance concerns] as 'performance deficiencies' (Opp. 11), which had nothing to do with race discrimination. These allegations belie any inference that Ms. Lee (the alleged discriminator) acted with discriminatory motive, or that race played any part in his separation.[6]

## V.    THE IIED CLAIM (COUNT IV) IS PREEMPTED BY THE WORKERS' COMPENSATION ACT ("WCA")

Plaintiff erroneously claims there can be no WCA preemption where the IIED claim is "intertwined" with civil rights claims. Opp. 15. This statement is baseless. Plaintiff conflates courts' treatment of individual defendants with that of employers. The WCA is the exclusive remedy for personal injury claims against employers but does not always shield ***individual defendants*** from such liability. *Ruffino v. State St. Bank & Tr. Co.*, 908 F. Supp. 1019, 1049 (D. Mass. 1995); *O'Connell v. Chasdi*, 400 Mass. 686, 690 (1987); *Morehouse v. Berkshire Gas Co.*, 989 F. Supp. 54, 65 (D. Mass. 1997). The IIED claim remains preempted.

---

[6] The "same actor" inference, described in Defendant's Opening Brief, carries even greater force in the visa sponsorship context, where employers voluntarily assume costs, compliance burdens, and legal risks to employ foreign nationals.

6

## VI.    PLAINTIFF'S NEWLY RAISED ALLEGATION TO FURTHER HIS WTPP CLAIM (COUNT VI) IS UNSUPPORTED BY ANY ALLEGATIONS IN THE FAC

The SJC's decision in *Shea v. Emmaneul College*, 425 Mass. 761 (1997), does not support Plaintiff's assertion that internal reports of safety violations can ground a WTPP claim. Instead, the SJC held that an internal complaint about a violation of criminal law may, in some circumstances, support a WTPP claim. *Id.* at 762-63. Perhaps for this reason, Plaintiff now argues for the first time in his Opposition that the WTPP "claim rests on a Massachusetts criminal statute[.]" Opp. 22. This allegation is entirely absent from and unsupported by the FAC – let alone utterly false – and should be rejected.

## VII.    THE WAGE ACT CLAIM (COUNT IX) IS FUNDAMENTALLY FLAWED

Contrary to Plaintiff's representation (Opp. 28), *Reuter v. City of Methuen*, 489 Mass. 465 (2022), does not support (or even address) Plaintiff's argument that ESPP payments are converted into wages and due immediately upon separation. As discussed in the Opening Brief (Sec. VIII), "wages" are clearly defined under Massachusetts law, and do not include ESPP payments or discretionary bonuses.

### CONCLUSION

Vertex respectfully requests an order dismissing the FAC in its entirety, with prejudice.

7

Dated:  May 8, 2026

Respectfully submitted,

VERTEX PHARMACEUTICALS
INCORPORATED,

By its Attorneys,


*/s/ Lynn A. Kappelman*
Lynn A. Kappelman (BBO # 642017)
lkappelman@seyfarth.com
Christopher W. Kelleher (BBO # 705508)
ckelleher@seyfarth.com
SEYFARTH SHAW LLP
Two Seaport Lane, Suite 1200
Boston, MA 02210-2028
Telephone:  (617) 946-4800
Facsimile:  (617) 946-4801

## CERTIFICATE OF SERVICE

I, Lynn A. Kappelman, hereby certify that on May 8, 2026, a true and accurate copy of the foregoing document was electronically filed through the Court's ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

/s/ Lynn A. Kappelman
Lynn A. Kappelman