**UNITED STATES DISTRICT COURT**

**DISTRICT OF MASSACHUSETTS**

<table>
<tr><td>

KRANTHI SAGAR PACHIKORU,
Plaintiff,

v.

VERTEX PHARMACEUTICALS INC.,
Defendant.

</td><td>

Civil Action No.: 4:25-CV-40184-MRG

**ORAL ARGUMENT**
**REQUESTED**

</td></tr>
</table>

**Leave to file granted on May 18, 2026**

**PLAINTIFF'S SURREPLY TO DEFENDANT'S REPLY**
**IN SUPPORT OF MOTION TO DISMISS**

## I. THIS COURT'S RECENT DECISION REAFFIRMS TVPRA's FRAMEWORK AND APPLICATION

This Court has already held that "[t]he phrase 'serious harm' in the context of forced labor[ ] extends to non-physical coercion, including financial or reputational harm and threats of deportation." *Dias De Souza v. Am. Used Auto Parts, Inc.*, No. 4:25-cv-40077-MRG, 2026 WL 788267, at *7 (D. Mass. Mar. 20, 2026) (Guzman, J.). *Dias De Souza* relied on the very authority Defendant urges this Court to discard — *Adia v. Grandeur Mgmt., Inc.*, 933 F.3d 89, 93 (2d Cir. 2019) (see ECF 32 at 2) — and applied it alongside *United States v. Kalu*, 791 F.3d 1194, 1212 (10th Cir. 2015), where threats to revoke immigrant workers' visas and expose them to deportation were held sufficient to constitute serious harm under § 1589. *Dias De Souza*, 2026 WL 788267, at *7. The complaint there was dismissed only because the plaintiffs offered "vague references" and "conclusory statements." *Id.* at *8. The FAC pleads the inverse: dated communications (FAC ¶¶17, 19, 23, 250–253); named actors (FAC ¶¶88, 90, 102, 117(b),

1

247–248); identified batches and risk-assessment numbers (FAC ¶¶81, 108, 112, 125); concealed VUSIP recoupment terms (FAC ¶¶33, 42); and the H-1B revocation that completed the threat (FAC ¶¶155–161).

## II. MATTERS REQUIRING SUBSTANTIVE RESPONSE

A reply is confined to matters raised in opposition; new arguments are forfeited. *Sandstrom v. ChemLawn Corp.*, 904 F.2d 83, 86 (1st Cir. 1990).

**A. Defendant's Termination-Theory Attacks Fail:** ECF 32 at 3 n.4 asks the Court to construe the pleaded word "mostly" as "most likely." That request inverts Rule 12(b)(6): the pleaded text — "I will submit my resignation mostly, today; if not tomorrow" (FAC ¶151) — is conditional and prospective on its face. *Twombly, Haines, and Erickson v. Pardus,* 551 U.S. 89, 94 (2007)*,* foreclose the request. Plaintiff's primary theory — employer-accelerated separation under *Forsythe v. Wayfair Inc.*, 27 F.4th 67, 81 (1st Cir. 2022) — is engaged by the Reply only on the offer-of-resignation prong (ECF 32 at 3), not on the accelerated-separation rule pleaded at FAC ¶¶149–153. The constructive-discharge alternative is independently sustained. This District has sustained constructive discharge against Vertex on materially similar facts — project removal and consultant replacement. *Vertex Pharms., Inc. v. Renshaw*, No. 16-cv-11912-FDS, 2017 WL 1015003, at *3 (D. Mass. Mar. 15, 2017) (Saylor IV, J.). The FAC pleads the same arc (FAC ¶118). For an H-1B worker near the six-year cap, deliberate enforced idleness states constructive discharge. *Parrett v. City of Connersville*, 737 F.2d 690, 694 (7th Cir. 1984); *Pa. State Police v. Suders,* 542 U.S. 129, 141 (2004). Defendant's conflation of FAC ¶¶39 and 118 (ECF 32 at 3–4) collapses two non-overlapping periods: ¶39 pleads March–April 2024 retaliatory overload during approved PTO in India; ¶118 pleads enforced idleness a year later, after the protected GMP

2

refusal. Redrafting the pleaded chronology against the pleader is foreclosed. *Twombly*, 550 U.S. at 555–56.

**B. Defendant's New Immigration Authorities Fail: (i)** *Matter of Chawathe*, 25 I. & N. Dec. 369, 375–76 (AAO 2010), refutes Defendant's reading. Approval issues on a "more likely than not" view of the petitioner's one-sided record even amid "some doubt as to the truth" — not conclusive proof of propriety — and leaves DOL noncompliance and revocation untouched. 8 C.F.R. § 214.2(h)(11)(iii)(A); 20 C.F.R. § 655.731(c)(9)–(10). The FAC pleads two distinct falsifications on two distinct sworn agency filings: the SOC misclassification (13-1082.00 *v.* 11-3051.01) corrupts DOL's Form ETA-9035; the OCC misclassification (Computer Related "030" v. chemist) independently corrupts USCIS's Form I-129 (FAC ¶¶14,15, 221(a) and (b)). The argument is also circular: the FAC pleads the approval was itself procured by a fabricated RFE response (FAC ¶¶17, 19, 23) — Defendant cannot invoke that approval to disprove the fraud that produced it. **(ii)** *Dhanasar's* prong two evaluates the petitioner's existing "record of success in related or similar efforts." 26 I. & N. Dec. at 890. Although Dhanasar's prong-one and prong-three inquiries are forward-looking, prong two evaluates the petitioner's documented record — the precise record Vertex's misclassifications corrupted. The pleaded SOC/OCC misclassifications corrupt that record and constitute material misrepresentations to USCIS. INA § 212(a)(6)(C)(i); *Kungys v. United States*, 485 U.S. 759, 770–72 (1988); ECF 28 at 7 & n.7; FAC ¶178. NIW remains discretionary under INA § 203(b)(2)(B)(i)'s permissive "may." The pleaded detriment is forbearance of available pathways (FAC ¶¶ 11, 256–270), not guaranteed approval; ECF 32 at 5 n.5 addresses an outcome Plaintiff does not allege. **(iii)** *Rajah* governs IJ continuances in removal proceedings, not Massachusetts promissory estoppel, which is fact-bound. *Loranger Constr. Corp. v. E.F. Hauserman Co.,* 376 Mass. 757, 760–61 (1978).

3

Petitioning authority is statutorily reserved to the employer; Defendant cannot treat agency adjudication as conclusive proof under *Chawathe* yet too speculative to support reliance under *Rajah*. 8 U.S.C. § 1153(b); 20 C.F.R. § 656.17(a).

**C. The "Skilled Professional" Framing Is a Category Error:** Section 1589(c)(2)'s "same background and . . . circumstances" standard (§ I *supra*) measures the victim's pleaded circumstances — not a generic "skilled professional," and not a pleading-stage comparator requirement.[1] The TVPRA contains no skill-level limitation. The Ninth Circuit applied § 1589 to credentialed TN-visa professionals. *Martínez-Rodríguez v. Giles*, 31 F.4th 1139, 1150–56 (9th Cir. 2022). Giles independently endorsed Adia, foreclosing Defendant's bid (ECF 32 at 2) to confine Adia to a "housekeeping attendant." Accord *Lyu v. Alfa Chemistry Inc.,* No. 23-CV-7951, 2025 WL 1093134; *Paguirigan v. Prompt Nursing Emp. Agency LLC*, 286 F. Supp. 3d 430; ECF 28 at 18–19, 20 & n.21. Defendant's Reply effort to confine *Chellen v. John Pickle Co.*, 446 F. Supp. 2d 1247 (N.D. Okla. 2006), and the TVPRA to sex-trafficking or low-skill labor is unsupported by law and engages a category not pleaded[2]. Federal anti-peonage doctrine is status-neutral and reaches both physical and legal coercion. *Bailey v. Alabama*, 219 U.S. 219, 240–41 (1911).

---

[1]The "circumstances similar to his" framing (ECF 32 at 2) overlooks the structural posture of an H-1B worker terminated near the six-year cap without either a PERM labor certification or an approved I-140. By federal regulation, employer-initiated termination triggers a discretionary 60-day grace period; on expiration, the worker must depart the United States or have obtained a new H-1B sponsorship or change of status — and the same clock binds the H-4 spouse. 8 C.F.R. § 214.1(l)(2). The two statutory off-ramps from the six-year cap are AC21 § 106(a)–(b) (one-year extensions where a PERM or I-140 has been pending 365+ days), Pub. L. No. 106-313, §§ 106(a)–(b), 114 Stat. 1251, 1253–54 (2000); 8 C.F.R. § 214.2(h)(13)(iii)(D); and AC21 § 104(c) (three-year extensions with an approved I-140 blocked by per-country backlog), 114 Stat. at 1252; 8 C.F.R. § 214.2(h)(13)(iii)(E). Both are statutorily foreclosed where, as here, the employer never initiated PERM and never filed Form I-140. The deportation threat § 1589(c)(2) reaches is therefore not one Defendant uttered; it is the automatic regulatory consequence Defendant triggered by terminating the H-1B without initiating either green-card pathway. FAC ¶¶155–161; *Dias De Souza*, 2026 WL 788267, at *7.

[2]Defendant's footnote (ECF 32 at 2 n.2) imputes a position Plaintiff did not take. *Chellen* was cited (Opp. at 16 & n.17) for its § 1981/ fraud convergence with Indian-ancestry plaintiffs and false immigration promises — not for § 1589's 2006 reach.

**D. The Same-Actor Inference Inverts in the Captive-Worker Context:** Defendant invokes the "same-actor" inference (ECF 32 at 6 n.6) to neutralize the § 1981 ancestry claim. The inference is permissive only, not presumptive. *Vélez v. Thermo King de P.R., Inc.*, 585 F.3d 441, 451 (1st Cir. 2009); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 573–74 (6th Cir. 2003) (en banc). In the visa-sponsorship context, the inference inverts — sponsorship is the leverage, not the disproof of animus: the employer's economic incentive is to sponsor at the front end and retaliate once the labor value is captured — as FAC ¶¶39, 44, 49, 94–100, 116 pleads — the inference loses force entirely. Defendant also conflates sole and but-for causation. *Comcast Corp. v. NAAAOM*, 589 U.S. 327, 333 (2020); *Bostock v. Clayton Cnty.*, 590 U.S. 644, 656 (2020). FAC ¶165 pleads three-way disparate enforcement: non-Indian Employee A was waived from a PIP and laterally transferred, while Plaintiff and Indian-ancestry Employee B — both were placed on PIPs. That divergence predates the protected GMP refusal and pleads ancestry-based disparate treatment under *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987), independent of the GMP dispute.

**E. The Reply's New Wage Act Point** — ECF 32 at 7: The Reply raises one new Wage Act argument; it misreads the Opposition and leaves Count IX's pleaded core unrebutted.[3]

## III. ANSWERING REMAINING REPLY ASSERTIONS

**A. The "integrated coercive scheme" argument — ECF 32 at 1 (§ I.A):** The scheme is pleaded (FAC ¶¶ 221(a)–(e), 222, 223(a)–(f)), tracking § 1589(a)(3)–(4). *Redondo-Borges* bars new facts, not legal characterizations of facts already pleaded; Rule 8(d)(2) permits alternative pleading.

---

[3]The new point — that *Reuter v. City of Methuen*, 489 Mass. 465 (2022), does not address ESPP conversion (ECF 32 at 7) — rebuts a position the Opposition never took: *Reuter* was cited for the timing and treble-rule once wages are owed, not as ESPP-conversion authority. Count IX independently rests on accrued PTO, unpaid regular wages, and the unpaid $750 Gold VOCAP — uncontested by the Reply. FAC ¶¶154, 163, 274(b)–(d).

**B. Cat's paw under *Brandt* and *Brnovich* — ECF 32 at 5–6 (§ IV)**: *Staub v. Proctor Hosp.*, 562 U.S. 411, 421 (2011), controls at the pleading stage and *Brandt* applies it. *Brandt* and *Staub* apply differently here: the "dupe" under *Staub/Brandt* is the termination decisionmaker who relied on the fabricated PIP (FAC ¶¶117(b), 152), not Ms. Lee herself, and ancestry-based animus is pleaded through the comparator allegations at (FAC ¶¶55, 165). ECF 28 at 10–11.

**C. The WCA Does Not Reach Counts III and V — ECF 32 at 6 (§ V):** Defendant's Workers' Compensation Act ("WCA") argument addresses only Massachusetts common-law tort doctrine. The pleaded emotional-distress harm is independently recoverable as "serious harm" under TVPRA § 1589(c)(2) and as compensatory damages under § 1981 — federal remedies a state exclusivity scheme cannot displace. *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 459–61 (1975); FAC ¶¶ 155–161.

**D. *Shea*/ The Absence of Massachusetts criminal statute — ECF 32 at 7 (§ VI):** Federal predicates 21 U.S.C. §§ 331, 333, 351 are expressly pleaded at FAC ¶¶ 232(a), 238 — governing release of contaminated drug for patient use. *Shea v. Emmanuel Coll.*, 425 Mass. 761, 762–63 (1997). M.G.L. c. 94, §§ 186, 190 are application of law to pleaded facts. *Johnson v. City of Shelby*, 574 U.S. 10, 11–12 (2014) (per curiam) (Rule 8 requires facts, not labels).

## IV. DEFENDANT'S "COMMON SENSE" ARGUMENT

Defendant's "common sense" argument (ECF 32 at 4) cites no authority and, at its strongest, asks the Court to infer that an employer bearing upfront sponsorship costs cannot have acted with coercive intent. That contention fails three times over. ***First***, it is a competing factual inference, and at Rule 12(b)(6) the plausible inference runs to the pleader, not the movant. *Twombly*, 550 U.S. at 555–56. ***Second***, it proves too much: if bearing mandatory petition costs defeated a fraud or coercion claim, every sponsoring employer would be immunized by

6

operation of fees the INA already requires it to pay. 8 U.S.C. § 1182(n)(2)(C)(vi)(I)–(II); 20 C.F.R. § 655.731(c)(9)(ii)–(iii). ***Third***, federal anti-peonage law forecloses the premise: the Antipeonage Act preserves "completely free and voluntary labor" and renders coercion unlawful "even if it was voluntarily contracted for." *Pollock v. Williams*, 322 U.S. 4, 17, 22 (1944); 42 U.S.C. § 1994. Employer investment recharacterized as worker-borne debt forgivable only on employer-controlled metrics is the financial-leverage mechanism § 1589(c)(2) and § 655.731(c)(10) reach — precisely the pleaded $15,000–$30,000 VUSIP recoupment exposure (FAC ¶¶ 33, 42).

Defendant recasts *Lyu*, 2025 WL 1093134, as a New York-law case (ECF 32 at 2 n.3). *Lyu's* operative holdings are federal — § 1589 forced labor (id. at 11–12) and § 1981 disparate treatment (id. at 9–10) both survived dismissal on facts mirroring the federal counts pleaded here (Counts III and V). New York contract-enforceability appeared only as an analytical input to § 1589(a)(2)'s serious-harm prong, not as an independent state holding. ECF 28 at 18–19 mapped VUSIP onto each *Lyu* factor; the Reply drew no response. VUSIP is independently unenforceable under federal H-1B law. 20 C.F.R. § 655.731(c)(10). And under § 1589(a)(3), a coercive provision need only be believed binding; enforceability is irrelevant. *Bailey*, 219 U.S. at 240–41; *United States v. Dann*, 652 F.3d 1160, 1170 (9th Cir. 2011); see *Byron v. Avant Healthcare Pros., LLC*, 2024 WL 2304490, at *13–*15 (M.D. Fla. Apr. 10, 2024); *McClain v. Cape Air*, 2023 WL 3587284, at *8 (D. Mass. May 22, 2023); *Magtoles v. United Staffing Registry*, Inc., 2021 WL 6197063, at *3–*9 (E.D.N.Y. Dec. 30, 2021).

## CONCLUSION

For the reasons stated above and in ECF 28, the Court should deny Defendant's Motion to Dismiss in its entirety.

Dated: May 18, 2026

Respectfully submitted,

/s/ Kranthi Sagar Pachikoru

_____

Kranthi Sagar Pachikoru

Plaintiff, Pro Se
2 Congress St, Ste 18
Milford, MA 01757
Phone: 571-570-3607
Email: kranthi@tuta.io

## CERTIFICATE OF SERVICE

I hereby certify that on the date set forth above, the foregoing document was filed through the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Kranthi Sagar Pachikoru

_____

Kranthi Sagar Pachikoru
Plaintiff, Pro Se